IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| CHARLES DONELSON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 15-CV-95-SMY-RJD |
|  | ) |  |
| DR. SHEARING, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Before the Court are Defendants Robert Shearing and Samuel Nwaobosi's Motion for Summary Judgment and Defendant Aimee Lang's Motion for Summary Judgment (Docs. 216, 226). Plaintiff Charles Donelson filed an action pursuant to 42 U.S.C. § 1983, alleging several constitutional violations (Docs. 1, 2). The Court subsequently severed Plaintiff's claims into separate actions (Doc. 1). In this case, Plaintiff asserts the following claims:

> **Count 1:** Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Shearing for failure to treat Plaintiff's tonsils;
>
> **Count 2:** Eighth Amendment deliberate indifference to serious medical needs claim against Dr. Nwaobasi for failure to treat Plaintiff's tonsils; and
>
> **Count 3:** Eighth Amendment deliberate indifference to serious medical needs claim against Medical Technician Aimee Lang for delaying Plaintiff's appointments with physicians.

(Doc. 57).

Defendants now move for summary judgment of Plaintiff's Eighth Amendment claims. For the following reasons, the Court **GRANTS** summary judgment with respect to Defendant Lang and **DENIES** summary judgment as to Defendants Nwaobosi and Shearing.

# FACTUAL BACKGROUND

Plaintiff Charles Donelson was incarcerated at Menard Correctional Center from July 18, 2012 until October 19, 2013. Wexford Health Sources contracts with the Illinois Department of Corrections ("IDOC") to provide medical services to inmates and Defendants Shearing and Nwaobosi were employed by Wexford as physicians. Defendant Lang was employed by IDOC as a medical technician. Her duties included evaluating inmates who request medical attention. During his time at Menard, Donelson had medical complaints regarding his ears and throat. According to the medical records, Donelson received the following evaluations and treatment for his complaints:

> On November 22, 2012, Donelson complained to Defendant Lang of intermittent, sharp, stabbing pain in both ears, which Donelson rated as 4 of 10 (Doc. 217-1 at 2). Lang assessed an ear ache or ear wax impaction, recommended medication for pain and ear wax removal, and did not refer Donelson to a physician. (*Id.*)

> On December 28, 2012, Donelson complained to a nurse about nasal congestion, itchy throat, ear discomfort and headaches.[1] (*Id.* at 3). The nurse assessed a cold or upper respiratory infection, recommended medication for pain and cold symptoms, and did not refer Donelson to a physician. (*Id.*)

> On January 12, 2013, Donelson complained to a nurse of pain in both ears, which he rated as 4 of 10. (*Id.* at 4). He informed the nurse about his prescription for Prilosec and indicated that his tonsils had not been removed. (*Id.*) The nurse recommended medication for pain and referred Donelson to a physician. (*Id.*)

> On January 18, 2013, Donelson saw Dr. Nwaobosi, complaining of foot pain and ear pain. (*Id.* at 5). Dr. Nwaobosi diagnosed rotational trauma of the left foot and a common cold. (*Id.*) He recommended an X-ray of the left foot, ibuprofen for pain, medication for cold symptoms and scheduled a follow up appointment for

---

[1] Plaintiff attests that Defendant Lang evaluated him rather than a nurse based on a copy of a medical record in which the handwritten signature is replaced by typed writing that states, "/s Aimee Lang." (Doc. 236 at 75, 115, 119). No explanation is given for attributing the medical record to Defendant Lang, and the evidence, including Lang's affidavit and a notation on the medical record, suggests that Lang did not prepare the medical record (Doc. 217-1 at 3; Doc. 227-1.) .

three weeks later. (*Id.*) Donelson did not attend the follow up appointment due to an institutional lockdown. (*Id.* at 5-6).

On February 27, 2013, Donelson complained of numbness, tingling and pain in both wrists to Lang. (*Id.* at 7). Lang assessed non-specific discomfort and recommended pain medication. (*Id.*)

On March 27, 2013, Donelson saw Land and reported right ear pain, which he rated as 7 of 10. (*Id.* at 8). Lang's assessment was ear ache or ear wax impaction. She recommended pain medication and referred Donelson to a physician. (*Id.*) Donelson did not attend his scheduled appointment with the physician on April 1, 2013 due to an institutional lockdown. (*Id.* at 9.)

On April 5, 2013, Donelson was examined by Dr. Shearing and complained of pain in both ears and an intermittent sore throat. (*Id.* at 10.) Dr. Shearing diagnosed pharyngitis and instructed Donelson to follow up as needed. (*Id.*)

Donelson transferred to Pontiac Correctional Center on October 19, 2013. He was diagnosed with tonsillitis on December 10, 2014 (Doc. 217-2 at 8).

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on the motion, the Court must "examine the record and all reasonable inferences in the light most favorable to the non-moving party." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). Summary judgment must be denied "if a material issue of fact exists that would allow a reasonable jury to find in favor of the non-moving party." *Id.*

The Eighth Amendment protects prisoners from cruel and unusual punishment. U.S. Const., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992).

3

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). To establish deliberate indifference to a medical condition, a prisoner must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Id.*

"A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Whether an injury is sufficiently serious is a fact specific inquiry. Seriousness may be shown if an ordinary physician would find that the injury warranted treatment, if the injury significantly impacted an individual's daily activities, or if the injury caused chronic or substantial pain, among other things. *Gutierrez*, 111 F.3d at 1373.

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). If an official reasonably responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Id.* Moreover, a claim for medical negligence does not amount to deliberate indifference. *Gutierrez*, 111 F.3d at 1369.

*Failure to Provide Medical Treatment*

Donelson alleges that Dr. Nwaobosi and Dr. Shearing acted with deliberate indifference by failing to treat his medical condition. However, Defendants contend that the evidence does not create a triable issue of fact as to whether they acted with deliberate indifference.

According to Declarations submitted by Donelson and his deposition testimony, Lang told him on November 22, 2012 that she would schedule him for an appointment with a physician (Doc. 236 at 115). Dr. Shearing told Donelson that he observed his red and swollen tonsils, but that he could do nothing for him (Doc. 232-7 at 24). On January 18, 2013, Donelson also complained to Dr. Nwaobosi about his throat and Dr. Nwaobosi saw that his tonsils were red and swollen on that date (Doc. 232-7 at 20; Doc. 236 at 37-38.) Donelson repeatedly sought an appointment with a physician through Lang and consistently rated his pain as 10 of 10 (Doc. 236 at 49, 117). Based on these facts, a jury could reasonably conclude that Donelson's condition was objectively serious.

As to the subjective component, there is evidence in the record that both defendant physicians observed Donelson's swollen tonsils. In his discovery responses and affidavit, Dr. Shearing acknowledges that tonsillitis or swollen tonsils may be caused by a bacterial or viral infection and that the treatment varies based on the cause of the inflammation and may consist of gargling saltwater, antibiotic medication or surgical removal (Doc. 232-4 at 10). However, there is no indication that either defendant physician provided or recommended such treatment for Donelson. As such, there is sufficient evidence to support Donelson's claim of deliberate indifference against Dr. Nwaobosi and Dr. Shearing for failing to appropriately treat his medical condition, and this claim shall proceed to trial.

Donelson also maintains that Dr. Nwaobosi acted with deliberate indifference by prescribing ibuprofen because other physicians had advised him that ibuprofen would aggravate his ulcers. However, there is no evidence in the record that the ibuprofen prescribed aggravated his medical condition or that Dr. Nwaobosi knew of the potential for such harm. Therefore, Defendants' Motion for Summary Judgment is granted with respect to Donelson's claim against Dr. Nwaobosi regarding the ibuprofen prescription.

*Delay in Treatment*

Donelson claims that Defendant Lang acted with deliberate indifference by delaying his appointments with physicians during the period November 2012 to March 2013. (Doc. 236 at 13.) Lang asserts that she is entitled to summary judgment because no evidence suggests that those delays were detrimental. For a deliberate indifference claim based on delayed treatment, "a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007). Expert testimony is not required, but, generally, a mere description of diagnosis and treatment does not suffice. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008).

Here, Donelson alleges that Lang's delays in arranging appointments with physicians prolonged his pain and worsened his medical condition. Although there were delays, Donelson offers no medical evidence from which a reasonable jury could find that the delays resulted in any specific detriment to him. Lang provided Donelson with pain medication on three occasions within the relevant timeframe, and Donelson admits that his pain remained constant, even following his appointments with the physicians. Ultimately, Donelson offers no evidence to establish that more immediate appointments would have improved his medical condition. Accordingly, Defendant Aimee Lang's Motion for Summary Judgment will be granted.

## CONCLUSION

It is hereby **ORDERED** that Defendant Lang's Motion for Summary Judgment (Doc. 226) is **GRANTED**. It is further **ORDERED** that Defendants Nwaobosi and Shearing's Motion for Summary Judgment (Doc. 216) is **GRANTED** with respect to Donelson's claim against Defendant Nwaobosi regarding the ibuprofen prescription, but **DENIED** with respect to Donelson's claim against Defendants Nwaobosi and Shearing regarding their medical treatment for tonsillitis. The Clerk of Court shall enter judgment for Defendant Aimee Lang and against Plaintiff Charles Donelson on Count 3 at the close of the case. Counts 1 and 2 against Defendants Samuel Nwaobosi and Robert Shearing will proceed to trial.

**IT IS SO ORDERED.**

**DATED: June 19, 2017**

                                                   **s/ Staci M. Yandle**
                                                   **STACI M. YANDLE**
                                                   **United States District Judge**